Filed 11/18/21  In re Andrew G. CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re ANDREW G. et al., Persons Coming Under the Juvenile Court Law. | B312292 (Los Angeles County Super. Ct. No. 20CCJP06693A-B) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. MARIBEL G., Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County. Martha A. Matthews, Judge. Affirmed, but conditionally remanded.

Annie Greenleaf, under appointment by the Court of Appeal, for Defendant and Appellant.

Rodrigo A. Castro-Silva, County Counsel, Kim Nemoy, Assistant County Counsel, and William D. Thetford, Principal Deputy County Counsel, for Plaintiff and Respondent.

\* \* \* \* \* \*

Maribel G. (mother) appeals from an order of the juvenile court exerting dependency jurisdiction over her two sons, Andrew G. and Marvin C. Her sole contention on appeal is that the juvenile court erred in concluding that the Indian Child Welfare Act (25 U.S.C. § 1901 et seq.; Welf. & Inst. Code § 224.1 et seq.)[1] (ICWA) did not apply. Mother is correct, and we conditionally reverse and remand.

## FACTS AND PROCEDURAL BACKGROUND[2]

### I. Facts Warranting Petition, Jurisdiction and Disposition

Mother has two children, ostensibly with two different men: Erik A. is the biological father of Andrew G. (born July 2015), and

---

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

[2] Because compliance with ICWA is the only issue raised in this appeal, our discussion of the facts and procedural background focuses on the facts relevant to compliance with ICWA. (*In re I.B.* (2015) 239 Cal.App.4th 367, 370.)

2

Edgar C. is alleged to be the father of Marvin C. (born August 2020). Edgar C. has not taken a paternity test, and denies that he is Marvin's father. In late 2020, mother had custody of both children.

In late December 2020, the Los Angeles Department of Children and Family Services (the Department) filed a petition asking the juvenile court to exert dependency jurisdiction over Andrew and Marvin on the grounds that the children were at substantial risk of serious physical harm because (1) mother had engaged in a violent altercation with Edgar C. and his female companion; (2) mother is a current substance abuser, and drove with the children while under the influence of alcohol; (3) mother has mental health issues; (4) both Erik A. and Edgar C. knew of mother's issues and failed to protect their respective child; and (5) Erik A. was unwilling and unable to provide care and supervision for his son. The Department urged that jurisdiction was appropriate under subdivisions (a), (b) or (j) of section 300.

In late April 2020, the juvenile court exerted jurisdiction over both boys after sustaining all of the allegations except the ones alleging jurisdiction under subdivision (a) of section 300. The court also found that ICWA did not apply. The court went on to remove the boys from mother's custody, and ordered the Department to provide reunification services.

## II. ICWA-Related Facts

### A. *As to mother*

In early December 2020, the Department asked mother if either child had any Native American heritage. She denied any such heritage.

### B. *As to Erik A.*

The Department spoke with Erik A. in mid-December, but

did not ask if he had any Indian ancestry.

### C. *As to Edgar C.*

The Department spoke with Edgar C. in early December 2020, and again in mid-January 2021. Initially, Edgar denied being Marvin's biological father, but stated he would take a paternity test and would seek custody of the minor if the results indicated he was the biological father. During a mid-January 2021 interview, however, Edgar C. refused to take a paternity test or to provide any information whatsoever.

### D. *Juvenile Court Proceedings*

The social worker who wrote the petition checked the box that she had "no reason to believe [either] child is or may be an Indian child." The detention report stated, "The Indian Child Welfare Act does not apply," but provided no explanation for its conclusion.

The juvenile court found ICWA did not apply.

## III. *Appeal*

Mother filed a timely notice of appeal.

## DISCUSSION

Mother argues the Department and the court did not comply with its duty under ICWA and related California law to inquire into the minors' possible American Indian heritage. "[W]e review the juvenile court's ICWA findings under the substantial evidence test, which requires us to determine if reasonable, credible evidence of solid value supports the court's order." (*In re A.M.* (2020) 47 Cal.App.5th 303, 314.) With ICWA, however, a reviewing court will not imply findings to support a juvenile court's ICWA findings where the agency has not documented its efforts to investigate whether a child is subject to ICWA. (*In re N.G.* (2018) 27 Cal.App.5th 474, 483-485.)

4

ICWA was enacted to curtail "the separation of large numbers of Indian children from their families and tribes through adoption or foster care placement." (*Miss. Band of Choctaw Indians v. Holyfield* (1989) 490 U.S. 30, 32.) Under the ICWA and California statutes our Legislature enacted to implement it (§§ 224-224.6), as recently amended, a juvenile court—and, as its delegate, the Department—have duties all aimed at assessing whether a child in a pending dependency case is an "Indian child" entitled to the special protections of ICWA. (§§ 224.2, 224.3; Stats. 2018, ch. 833 (Assem. Bill No. 3176); *In re A.M.* (2020) 47 Cal.App.5th 303, 320-321 [applying ICWA law in effect at time of order appealed from].) For these purposes, an "'Indian child'" is a child who (1) is "a member of an Indian tribe," or (2) "is eligible for membership in an Indian tribe *and* is the biological child of a member of an Indian tribe." (25 U.S.C. § 1903(4), italics added; § 224.1, subd. (a) [adopting federal law definition].) By its terms, this definition turns "'on the child's political affiliation with a federally recognized Indian Tribe,'" not "necessarily" "the child's race, ancestry, or 'blood quantum.'" (*In re Austin J.* (2020) 47 Cal.App.5th 870, 882 (*Austin J.*), quoting 81 Fed.Reg. 38801-38802 (June 14, 2016).)

Under ICWA as amended, the Department and juvenile court have "three distinct duties." (*In re D.S.* (2020) 46 Cal.App.5th 1041, 1052 (*D.S.*) [noting amendment's creation of three duties]; *Austin J.*, *supra*, 47 Cal.App.5th at pp. 883-884 [same].) The first duty, and the focus of our analysis here, is the initial "duty" of the Department and the juvenile court "to inquire whether [a] child is an Indian child." (§ 224.2, subds. (a) & (b).) The Department discharges this duty chiefly by "asking" family members "whether the child is, or may be, an Indian

5

child." (*Id.*, subd. (b).) For its part, the juvenile court is required, "[a]t the first appearance" in a dependency case, to "ask each participant" "present" "whether the participant knows or has reason to know the child is an Indian child." (*Id.*, subd. (c).) The second duty is the duty of the Department or the juvenile court to "make further inquiry regarding the possible Indian status of the child" (*id.*, subd. (e)), and the third duty is the duty to notify the relevant Indian tribe(s). (§ 224.3, subd. (a); 25 U.S.C. § 1912(a).) "The juvenile court must determine whether proper notice was given under ICWA and whether ICWA applies to the proceedings." (*In re E.W.* (2009) 170 Cal.App.4th 396, 403.) "The juvenile court is not authorized to determine [that] ICWA does not apply until (1) 'proper and adequate' ICWA notice has been given, and (2) neither a tribe nor the [Bureau of Indian Affairs] has provided a determinative response to the notice within 60 days of receiving the notice." (*In re N.G.* (2018) 27 Cal.App.5th 474, 480.)

The juvenile court erred in finding that Andrew was not subject to ICWA. Although the Department asked mother whether she had Indian ancestry, it never asked Andrew's father, Erik A. As the Department concedes, this was error because the Department did not discharge its duty to ask family members about Andrew's possible heritage.

The juvenile court also erred in finding that Marvin was not subject to ICWA. Again, the Department asked mother whether she had Indian ancestry. But the Department's inquiry into Indian ancestry on Marvin's father's side was deficient. The Department did not ask Edgar C. about any Indian heritage during its first interview with him, and did not ask him to fill out the ICWA-020 heritage form. The failure to do is, by itself, error.

6

(Cal. Rules of Court, rule 5.481(a)(2), (a)(3); see *In re J.N.* (2006) 138 Cal.App.4th 450, 461 [record did not support compliance with ICWA where no Parental Notification of Indian Status form had been completed].) Although Edgar C. refused to talk to the Department at the second interview, and although the Department may be excused from conducting further inquiry if the persons with potential information refuse to talk with the Department (e.g., *In re K.M.* (2009) 172 Cal.App.4th 115, 119), here the Department's report does not indicate whether it tried to ask Edgar C. about Indian heritage during the second meeting. Critically, the record does not indicate that the Department ever asked mother about Edgar C.'s heritage or about any of Edgar C.'s other family members who might have such knowledge. The paucity of information in the record is insufficient to discharge the Department's initial duty to inquire, and thus leaves the juvenile court without substantial evidence to support its ICWA finding.

The Department resists this conclusion with one further argument—namely, that Edgar C. denied being Marvin's father and has yet to be tested for paternity. Although ICWA applies only to biological parents (*In re C.A.* (2018) 24 Cal.App.5h 511, 520), the status of Edgar C. as Marvin's father is, at best, uncertain; indeed, Edgar C. himself seemed to acknowledge his own uncertainty about paternity when he initially told the Department, "I'm not the father, but if a paternity test confirms that I am, I will get involved." Although a man who has not established his biological paternity and has not acknowledged a child as his own lacks standing to object to an ICWA violation (*In re Daniel M.* (2003) 110 Cal.App.4th 703, 709), and although ICWA notice must be given to tribes only if biological parentage

7

has been established (*In re E.G.* (2009) 170 Cal.App.4th 1530, 1533), here it is *mother* who is making the objection and the issue here is the initial duty to inquire (not the final duty to give notice). The Department cites no authority for the proposition that the Department's duty of inquiry into ICWA regarding a possible parent's Indian heritage does not spring into existence until the biological connection with that parent has been conclusively established or admitted. Indeed, were such conclusiveness required at this early stage, the Department would be excused from initially inquiring into the possible Indian heritage of men who are only suspected of biological fatherhood; the net result would be less information with which to decide whether ICWA notice is required, less reliable ICWA determinations, and an increased danger that Indian children will be separated from their families and tribes—a result inimical to the stated goal of ICWA.

## DISPOSITION

The juvenile court's jurisdictional and dispositional orders are conditionally remanded, and the court is directed to properly comply with the requirements of the ICWA. If, after proper inquiry and notice, the court finds that either of the children have Native American ancestry, the court shall proceed in conformity with ICWA. Otherwise, the court's orders are affirmed.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, J.
HOFFSTADT


We concur:


_____, Acting P. J.
ASHMANN-GERST


_____, J.
CHAVEZ